**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

INTERNATIONAL HEALTH BRANDS, LLC,
a Delaware limited liability company,

                Plaintiff,

   vs.

ASHLEE R. FOY, an individual;
MICHAEL L. KAUFMAN, an individual;
and KCM BRANDS, LLC, a Florida limited
liability company,

                Defendants.

Case No. ___9:24-cv-80679___

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Randazza Legal Group, PLLC
2 S. Biscayne Blvd., Suite 2600
Miami, FL 33131
Tel: (888) 887-1776

Attorneys for Plaintiff
International Health Brands, LLC

## <u>TABLE OF CONTENTS</u>

NATURE OF THE ACTION ........................................................................................... 1

THE PARTIES............................................................................................................ 1

JURISDICTION ......................................................................................................... 1

FACTUAL ALLEGATIONS ......................................................................................... 2

   I.   IHB'S BUSINESS ............................................................................................ 2

   II.   IHB HIRES DEFENDANT FOY ........................................................................ 2

   III.   THEFT OF THE IHB FORMULATION, THE IHB EMAIL LIST, AND THE SPIKE + RESET BRAND .................................................................................................... 5

   IV.   THEFT OF THE RENUOLOGY BRAND ............................................................ 7

   V.   THEFT OF TRADE SECRETS .......................................................................... 10

   VI.   FOY'S TERMINATION FROM IHB AND SUBSEQUENT CHARGE OF DISCRIMINATION ........... 13

CLAIMS FOR RELIEF ............................................................................................... 15

FIRST CLAIM FOR RELIEF
VIOLATION OF THE DEFEND TRADE SECRETS ACT (DTSA) – IHB FORMULATION ............ 15

SECOND CLAIM FOR RELIEF
VIOLATION OF THE FLORIDA UNIFORM TRADE SECRETS ACT (FUTSA) – IHB FORMULATION ............................................................................................... 17

THIRD CLAIM FOR RELIEF
VIOLATION OF THE DEFEND TRADE SECRETS ACT (DTSA) – IHB EMAIL LIST ................ 18

FOURTH CLAIM FOR RELIEF
VIOLATION OF THE FLORIDA UNIFORM TRADE SECRETS ACT (FUTSA) – IHB EMAIL LIST ....................................................................................................... 20

FIFTH CLAIM FOR RELIEF
VIOLATION OF THE DEFEND TRADE SECRETS ACT (DTSA) – SPIKE + RESET BUSINESS PLAN ......................................................................................................... 22

SIXTH CLAIM FOR RELIEF
VIOLATION OF THE FLORIDA UNIFORM TRADE SECRETS ACT (FUTSA) – SPIKE + RESET BUSINESS PLAN ............................................................................... 25

SEVENTH CLAIM FOR RELIEF
VIOLATION OF THE DEFEND TRADE SECRETS ACT (DTSA) – RENUOLOGY
BUSINESS PLAN ....................................................................................... 28

EIGHTH CLAIM FOR RELIEF
VIOLATION OF THE FLORIDA UNIFORM TRADE SECRETS ACT (FUTSA) – RENUOLOGY
BUSINESS PLAN ....................................................................................... 31

NINTH CLAIM FOR RELIEF
BREACH OF CONTRACT ............................................................................ 34

TENTH CLAIM FOR RELIEF
TORTIOUS INTERFERENCE WITH A BUSINESS RELATIONSHIP ............................... 36

ELEVENTH CLAIM FOR RELIEF
DECLARATORY JUDGMENT ........................................................................ 41

PRAYER FOR RELIEF ....................................................................................... 43

DEMAND FOR JURY TRIAL .............................................................................. 44

For its Complaint against Defendants Ashlee R. Foy; Michael L. Kaufman; KCM Brands, LLC, Plaintiff International Health Brands ("IHB") hereby alleges as follows:

## NATURE OF THE ACTION

1. This is an action brought under the Defend Trade Secrets Act and its counterpart under Florida law, the Florida Uniform Trade Secrets Act, brought by an employer against its former employee who absconded with protected secrets and used those secrets to start a competing company. Plaintiff IHB seeks damages, attorneys' fees, costs, and permanent injunctive relief. Due to an existing dispute between Plaintiff IHB and Defendant Foy relating to the termination of Foy's employment which necessarily involves the trade secrets matter, Plaintiff IHB also seeks declaratory relief.

## THE PARTIES

2. Plaintiff International Health Brands, LLC, is a Delaware limited liability company and its principal place of business is located within Broward County, Florida.

3. Defendant Ashlee R. Foy is an individual residing in Palm Beach County, Florida.

4. Defendant Michael L. Kaufman is an individual residing in Palm Beach County, Florida.

5. Defendant KCM Brands, LLC, is a Florida limited liability company and its principal place of business is located within Palm Beach County, Florida.

## JURISDICTION

6. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331 and 18 U.S.C. § 1836(c). The Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

7. This Court has personal jurisdiction over Defendant KCM Brands because it is a Florida company with its principal place of business in Florida and in this judicial district.

8. This Court has personal jurisdiction over Defendants Foy and Kaufman because they are citizens of and reside in the state of Florida and in this judicial district.

9.      Venue is proper in the United States District Court for the Southern District of Florida under 28 U.S.C. § 1391(b) and (c) because all Defendants reside within this District, and because a substantial portion of the events which give rise to the claims herein occurred within this District.

<strong><u>FACTUAL ALLEGATIONS</u></strong>

**I.    IHB's Business**

10.     Plaintiff IHB is an organization which owns and operates a number of subsidiary brands in the natural health supplement market, including The Wellness Company and Zelenko Labs.

11.     Plaintiff IHB, including through its subsidiaries, employs individuals who, *inter alia*, research, develop, and market innovative and new health supplements which are sold across the United States to their customers.

12.     Plaintiff IHB is renowned for its cutting-edge scientific development and marketing of breakthrough products for consumers.

13.     Plaintiff IHB develops both products and marketing strategies for those products which are protected trade secrets.

14.     The products IHB develops, and the unique strategies IHB uses to market those products, are both closely guarded secrets from which IHB derives a majority of its revenue.

**II.   IHB Hires Defendant Foy**

15.     On or about June 17, 2022, Plaintiff IHB entered into an employment agreement with Defendant Ashlee Foy.

16.     A true and correct copy of that Employment Agreement is attached hereto as **Exhibit 1**.

17.     Defendant Foy was hired as IHB's Vice President of Operations and Brands and reported directly to IHB's then-Chief Executive Officer Richard B. Ford.

18.     In August 2023, Defendant Foy was promoted to the position of Chief Operating Officer of Plaintiff IHB.

19.     At the time of her termination, Foy was the highest-earning employee of IHB.

20.     As a part of her employment, Defendant Foy was responsible for developing new products and marketing strategies for those products.

21.     As set forth in Section 5 of her Employment Agreement with Plaintiff IHB, Defendant Foy understood that any intellectual property she created which was related to her employment with Plaintiff IHB belonged to IHB and that she could not use such intellectual property for any other purpose.

22.     Specifically, Plaintiff IHB's contract of employment with Defendant Foy contained an explicit assignment of such rights:

> You hereby agree that any and all right, title, and interest, including moral rights, however held, of any and all intellectual property including: patents, engineering data, designs, drawings, industrial designs, trademarks, trade secrets, programs, and software ("Intellectual Property"), that are, or were, related to, derived from, or stemming from, any Intellectual Property held by the Company or any of its subsidiary companies, parent company, or affiliated companies, shall be and shall remain the exclusive property of the Company. Employee further agrees that all Intellectual Property that is made by Employee (solely or jointly with others) within the scope of and during the period of the Employee's employment relationships constitutes "works made for hire" (to the greatest extent permitted by applicable law) and are compensated by Employee's salary. Employee agrees to execute any documentation required by the Company to protect its rights hereunder and appoints the Company as attorney-in-fact to execute any documentation to protect the Company's rights pursuant to this Agreement should Employee be unwilling or unable to do so, and to further agrees to assist the Company, or its designee, at its expense, in every proper way to secure the Company's, or its designee's, rights in the Intellectual

See **Exhibit 1**, Employment Agreement at § 5.

23.     As set forth in Section 11 of her Employment Agreement with Plaintiff IHB, Defendant Foy was required to keep company information secret and confidential.

24.     Specifically, Plaintiff IHB's contract of employment with Defendant Foy contained a confidentiality clause which required:

> The Employee shall hold in a fiduciary capacity for the benefit of the Company all trade secrets, secret or confidential information, knowledge or data relating to the Company or any of its affiliated companies, and their respective businesses, which shall have been obtained by the Employee during the Employee's employment by

the Company or any of its affiliated companies and which shall not be or become public knowledge (other than by acts by the Employee or representatives of the Employee in violation of this Agreement). After termination of the Employee's employment with the Company, the Employee shall not, without the prior written consent of the Company or as may otherwise be required by law or legal process, communicate or divulge any such information, knowledge or data to anyone other than the Company and those designated by it. … As used under this Section 11, "Confidential Information" shall include any medium or format for the Confidential Information, including, but not limited to, information that is written, oral, electronic, or digital, regardless of whether or not such information is subject to protection by copyright, patent, trademark, service mark, or otherwise. By way of example but not limitation of the foregoing, Confidential Information may be acquired by observing documents, things, people or events, by direct communication with clients or others or by overhearing conversations in person or over the telephone or otherwise.

See **Exhibit 1**, Employment Agreement at § 11.

25.     As set forth in Section 12 of her Employment Agreement with Plaintiff IHB, Defendant Foy was required to refrain from soliciting employees to leave IHB and to refrain from inducing or attempting to induce customers, suppliers, and other third parties to cease doing business with IHB during her employment with IHB and for a period of one year after termination of her contract of employment with IHB.

26.     Specifically, Plaintiff IHB's contract of employment with Defendant Foy contained a non-solicitation clause which required:

The Employee hereby agrees that during their employment and for a period of one year after termination of this agreement, (i) the Employee will not, directly or indirectly through another entity, induce or attempt to induce any employee of the Company or its subsidiaries to leave the employ of the Company or its subsidiaries, or in any way interfere with the relationship between the Company or its subsidiaries and any employee thereof or otherwise employ or receive the services of an individual who was an employee of the Company or its subsidiaries at any time during such Restriction Period, except any such individual whose employment has been terminated by the Company and (ii) the Employee will not induce or attempt to induce any customer, supplier, client, broker, licensee or other business relation of the Company or its subsidiaries to cease doing business with the Company or its subsidiaries.

See **Exhibit 1**, Employment Agreement at § 12.

### III.    Theft of the IHB Formulation, the IHB Email List, and the Spike + Reset Brand

27.    In the course and scope of her employment with IHB, Defendant Foy was exposed to various information, client lists, products, formulations, strategies, marketing data, and other sensitive information.

28.    Defendant Foy knew that she had a duty to IHB to keep such information secret.

29.    Plaintiff IHB took steps to protect such information in the form of, *inter alia*, requiring employees to agree to confidentiality agreements, protecting electronic data with password protection and encryption security, protecting documents, computers, and hard drives through physical security measures including instructing employees to keep such documents and devices in secure environments or under lock and key.

30.    During the term of Foy's employment, IHB researched and developed a unique product which contained a secret formulation of ingredients including Bromelain, Rutin, Lemon Balm, Hydroxytyrosol, Black Curmin Seed, Irish Sea Moss, Vitamin B12, Selenium, and Pomegranate (the "IHB Formulation").

31.    Defendant Foy, in the course and scope of her employment with IHB, was central in creating the IHB Formulation and brought the formulation to the attention of IHB leadership.

32.    Although IHB decided not to move forward with producing the IHB Formulation at that time, it did not write off the idea; instead, IHB leadership decided that it was not the right time for such a product, and it retained the prerogative to produce and sell the IHB Formulation in the future.

33.    On October 17, 2023, IHB became aware of an advertisement from a competing brand being sent to at least one individual associated with IHB.

34.    That competing brand was the Spike + Reset brand.

35.    Upon information and belief, that advertisement and others were sent to IHB's customers using a purloined email list which was owned by IHB (the "IHB Email List").

36.    The IHB Email List is a secret and confidential list curated and maintained by IHB.

37.     The Spike + Reset brand operated a website located at the internet domain spikereset.com.

38.     The Spike + Reset website marketed at least one product, which it called "Immunity Reset Gummies," which was formulated with a nearly identical formulation to the IHB Formulation.

39.     Upon information and belief, the Immunity Reset Gummies were in fact either an exact copy of the IHB Formulation or substantially identical to the IHB Formulation, and both contained the same ingredients.

40.     On October 17, 2023, after Plaintiff IHB discovered that the Immunity Reset Gummies product offered for sale on the Spike + Reset website containing the same ingredients as its secret formulation, Plaintiff IHB and its officers undertook further researching the Spike + Reset brand and the company behind it, and they held a meeting via Zoom to discuss it.

41.     Defendant Foy, IHB Owner/Founder Foster Coulson, IHB CEO and Ms. Foy's direct manager, Brandon Kuemper, and IHB's counsel, Lauren Bradford, attended the meeting.

42.     During that meeting, Coulson confronted Defendant Foy with the fact that the Spike + Reset trademark application was owned by Defendant Kaufman, listed as d/b/a "KCM Brands," and that KCM Brands, LLC, was a registered Florida limited liability company which listed Defendant Foy as its Chief Executive Officer.

43.     Coulson also confronted Defendant Foy with the fact that the Immunity Reset Gummies webpage listed a single review by a person named "A.F.," which conspicuously matched the initials of Defendant Ashlee Foy.

44.     Defendant Foy denied any knowledge of the Spike + Reset brand, of KCM Brands, LLC as an organization, and of the Immunity Reset Gummies product and claimed that either her name was used without her permission or that it was a coincidence.

45.     Defendant Foy's statements to her employer, IHB, at the meeting were false.

46.     Upon information and belief, Defendant Foy was in fact CEO of KCM Brands, LLC, while she was also employed by Plaintiff IHB.

47.     Upon information and belief, Defendant Foy created the business plan for the Spike + Reset brand, including forming the idea for the type of products to be sold by Spike + Reset and the market positioning of Spike + Reset, as a result of her employment at IHB and her creation of the business plan arose directly from Defendant Foy's exposure to IHB's trade secrets, including IHB sales data, market research, customer feedback, and other highly valuable proprietary information.

48.     Upon information and belief, but for Defendant Foy's exposure to IHB's trade secrets, including IHB sales data, market research, customer feedback, and other highly valuable proprietary information, Defendant Foy would not have been able to develop the business plan for the Spike + Reset brand or otherwise create any Spike + Reset products in the manner that they were created.

49.     Upon information and belief, although Defendant Foy developed the business plan for Spike + Reset within the course and scope of her employment with IHB, and the Spike + Reset brand is within the natural market of IHB's products and services, Defendant Foy hid the plan from her employer and secretly plotted to launch the brand on behalf of her own company in order to maximize her own pecuniary gain and disallow IHB from realizing the fruits of its investments.

50.     Upon information and belief, Defendant Foy created the Spike + Reset business plan within the course and scope of her employment, and thus such business plan was confidential information, intellectual property, and/or trade secrets belonging to IHB within the meaning of Sections 5 and/or 11 of her Employment Agreement with IHB.

## IV.    Theft of the Renuology Brand

51.     Upon information and belief, shortly before or shortly after Foy's employment was terminated by IHB, Foy launched yet another brand, leveraging the trade secrets she was exposed to working for IHB into a business venture which she ultimately used to attempt to unfairly compete with IHB.

52.     Specifically, by at latest October 21, 2023,[1] Defendant Foy, along with Defendant Kaufman, launched the brand Renuology.

53.     According to the trademark application filed by Defendants with the United States Patent and Trademark Office, the date of first use of the RENUOLOGY mark in commerce was September 1, 2023, nearly two months *prior* to the end of Defendant Foy's employment with IHB, indicating that Defendant Foy was likely marketing Renuology products while she was still employed by IHB.[2] *See* U.S. Trademark Application Serial No. 98/520,940 (filed Apr. 26, 2024).

54.     The Renuology brand is nominally owned and managed by Defendant KCM Brands, LLC, which, upon information and belief, is itself owned and controlled by Defendants Foy and Kaufman.

55.     Defendants market the Renuology brand as an alternative, holistic approach to health, in the same vein as IHB and its related brands.

56.     Through the Renuology brand, Defendants sell approximately 26 different products, including supplements such as "Collagen Gummies with Essential Nutrients," "Complete System Detox," and "Liquid D3 Ultra Fermented Tincture."

57.     Defendants sell the products to consumers through the Renuology website and advertise their products through channels such as YouTube,[3] Instagram,[4] and Facebook.[5]

58.     Upon information and belief, Defendant Foy created the business plan for the Renuology brand, including forming the idea for the type of products to be sold by Renuology and the market positioning of Renuology, as a result of her employment at IHB and her creation of the

---

[1]     According to WHOIS records, Defendants registered the <renuology.com> domain name on or about October 21, 2023.

[2]     The listed owner of RENUOLOGY trademark is "KTM Brands," identified as a Florida limited liability company with an address listed as "616 Windward Cir S Boynton Beach, FLORIDA UNITED STATES 33435," which is the same address as that of Defendant KCM Brands. Upon information and belief, "KTM" is a scrivener's error standing in for "KCM," as there is no entity registered with the Florida Department of State with a name containing "KTM Brands."

[3]     *See* https://www.youtube.com/@theofactor9354 (last accessed May 2, 2024).

[4]     *See* https://www.instagram.com/renuology/ (last accessed May 2, 2024).

[5]     *See* https://www.facebook.com/renuology/ (last accessed May 2, 2024).

business plan arose directly from Defendant Foy's exposure to IHB's trade secrets, including IHB sales data, market research, customer feedback, and other highly valuable proprietary information.

59.     Upon information and belief, but for Defendant Foy's exposure to IHB's trade secrets, including IHB sales data, market research, customer feedback, and other valuable proprietary information, Defendant Foy would not have been able to develop the business plan for Renuology or otherwise create any Renuology products in the manner that they were created.

60.     These facts are supported by Defendants' statements on the Renuology website, which reads: "It became evident to us that a crucial component was missing from the supplements flooding the market – a focus on what happens after our bodies ingest these supplements and the essential support needed for other interconnected factors within our bodies. [¶] Driven by this realization, we made the bold decision to step away from our corporate executive positions and embark on a mission to fill this gap." *See* "Our Story," Renuology (last accessed May 2, 2024).[6]

61.     As discussed in the above statement, Defendant Foy admits that although she was employed by IHB as Vice President of Operations and Brands and later Chief Operating Officer, and although her job duties included developing new products and brands for IHB, particularly brands which might be positioned as a "crucial component [that is] missing" from the supplements market in which IHB operates.

62.     Upon information and belief, although Defendant Foy developed the business plan for Renuology within the course and scope of her employment with IHB, and the Renuology brand is within the natural market of IHB's products and services, Defendant Foy hid the plan from her employer and secretly plotted to launch the brand on behalf of her own company in order to maximize her own pecuniary gain and disallow IHB from realizing the fruits of its investments.

63.     Upon information and belief, Defendant Foy created the Renuology business plan within the course and scope of her employment, and thus such business plan was confidential

---

[6]     Available at: https://renuology.com/pages/about-us.

information, intellectual property, and/or trade secrets belonging to IHB within the meaning of Sections 5 and/or 11 of her Employment Agreement with IHB.

**V.     Theft of Trade Secrets**

64.     Upon information and belief, Defendant Foy misappropriated the IHB Formulation for use by Defendant KCM Brands in its Immunity Reset Gummies without authorization.

65.     Upon information and belief, Defendant Foy misappropriated the IHB Email List for use by Defendant KCM Brands without authorization.

66.     Upon information and belief, Defendant Foy misappropriated the Spike + Reset business plan for use by Defendant KCM Brands without authorization.

67.     Upon information and belief, Defendant Foy misappropriated the Renuology business plan for use by Defendant KCM Brands without authorization.

68.     Upon information and belief, Defendant Foy misappropriated other trade secrets IHB owned for use in the KCM Brands enterprise without authorization.

69.     Upon information and belief, Defendant KCM Brands intentionally and unjustifiably assisted, induced, and/or encouraged Defendant Foy to misappropriate the IHB Formulation even though it knew Defendant Foy did not have authorization to do so and even though it knew that doing so was contrary to IHB's contract with Defendant Foy.

70.     Upon information and belief, Defendant KCM Brands intentionally and unjustifiably assisted, induced, and/or encouraged Defendant Foy to misappropriate the IHB Email List even though it knew Defendant Foy did not have authorization to do so and even though it knew that doing so was contrary to IHB's contract with Defendant Foy.

71.     Upon information and belief, Defendant KCM Brands intentionally and unjustifiably assisted, induced, and/or encouraged Defendant Foy to misappropriate the Spike + Reset business plan even though it knew Defendant Foy did not have authorization to do so and even though it knew that doing so was contrary to IHB's contract with Defendant Foy.

72.     Upon information and belief, Defendant KCM Brands intentionally and unjustifiably assisted, induced, and/or encouraged Defendant Foy to misappropriate the Renuology

business plan even though it knew Defendant Foy did not have authorization to do so and even though it knew that doing so was contrary to IHB's contract with Defendant Foy.

73.     Upon information and belief, Defendant KCM Brands intentionally and unjustifiably assisted, induced, and/or encouraged Defendant Foy to misappropriate IHB's trade secrets even though it knew Defendant Foy did not have authorization to do so and even though it knew that doing so was contrary to IHB's contract with Defendant Foy.

74.     Upon information and belief, Defendant KCM Brands knowingly and intentionally benefitted from Defendant Foy's misappropriation of the IHB Formulation.

75.     Upon information and belief, Defendant KCM Brands knowingly and intentionally benefitted from Defendant Foy's misappropriation of the IHB Email List.

76.     Upon information and belief, Defendant KCM Brands knowingly and intentionally benefitted from Defendant Foy's misappropriation of the Spike + Reset business plan.

77.     Upon information and belief, Defendant KCM Brands knowingly and intentionally benefitted from Defendant Foy's misappropriation of the Renuology business plan.

78.     Upon information and belief, Defendant KCM Brands knowingly and intentionally benefitted from Defendant Foy's misappropriation of IHB's trade secrets.

79.     Upon information and belief, Defendant Kaufman intentionally and unjustifiably assisted, induced, and/or encouraged Defendant Foy to misappropriate the IHB Formulation even though he knew Defendant Foy did not have authorization to do so and even though he knew that doing so was contrary to IHB's contract with Defendant Foy.

80.     Upon information and belief, Defendant Kaufman intentionally and unjustifiably assisted, induced, and/or encouraged Defendant Foy to misappropriate the IHB Email List even though he knew Defendant Foy did not have authorization to do so and even though he knew that doing so was contrary to IHB's contract with Defendant Foy.

81.     Upon information and belief, Defendant Kaufman intentionally and unjustifiably assisted, induced, and/or encouraged Defendant Foy to misappropriate the Spike + Reset business

plan even though he knew Defendant Foy did not have authorization to do so and even though he knew that doing so was contrary to IHB's contract with Defendant Foy.

82. Upon information and belief, Defendant Kaufman intentionally and unjustifiably assisted, induced, and/or encouraged Defendant Foy to misappropriate the Renuology business plan even though he knew Defendant Foy did not have authorization to do so and even though he knew that doing so was contrary to IHB's contract with Defendant Foy.

83. Upon information and belief, Defendant Kaufman intentionally and unjustifiably assisted, induced, and/or encouraged Defendant Foy to misappropriate IHB's trade secrets even though he knew Defendant Foy did not have authorization to do so and even though he knew that doing so was contrary to IHB's contract with Defendant Foy.

84. Upon information and belief, Defendant Kaufman knowingly and intentionally benefitted from Defendant Foy's misappropriation of the IHB Formulation.

85. Upon information and belief, Defendant Kaufman knowingly and intentionally benefitted from Defendant Foy's misappropriation of the IHB Email List.

86. Upon information and belief, Defendant Kaufman knowingly and intentionally benefitted from Defendant Foy's misappropriation of IHB's trade secrets.

87. IHB, IHB's related entities, KCM, Spike + Reset, and Renuology all operate within the market which consists of the sale of alternative holistic health supplements to consumers.

88. Due to the nature of this market, customers typically purchase products exclusively from one brand versus another and do not typically purchase multiple similar products from different vendors. Accordingly, when a brand acquires a new customer who previously purchased from a different brand, that new customer is likely to no longer purchase products from the old brand and instead exclusively purchase from the new brand.

89. Even if they do revert, the intervening period represents a lost sales opportunity for the other vendor.

90.     Upon information and belief, Defendants launched the Spike + Reset brand with the intention of inducing current customers of IHB and its related entities to cease doing business with IHB and its related entities and instead do business with Defendants.

91.     Upon information and belief, Defendants intended for the Spike + Reset brand to sell the same types of products as IHB and its related entities, through the same channels, to the same consumers.

92.     Defendants knew that by inducing customers to purchase from the Spike + Reset brand, those customers were likely to cease doing business with IHB and its related entities, and by marketing products for sale under the Spike + Reset brand, Defendants intended to take customers from IHB and its related entities.

93.     Upon information and belief, Defendants launched the Renuology brand with the intention of inducing current customers of IHB and its related entities to cease doing business with IHB and its related entities and instead do business with Defendants.

94.     Upon information and belief, Defendants intended for Renuology to sell the same types of products as IHB and its related entities, through the same channels, to the same consumers.

95.     Defendants knew that by inducing customers to purchase from the Renuology brand, those customers were likely to cease doing business with IHB and its related entities, temporarily or permanently, and by marketing products for sale under the Renuology brand, Defendants intended to take customers from IHB and its related entities.

**VI.     Foy's Termination from IHB and Subsequent Charge of Discrimination**

96.     Following the call with IHB and in the face of credible accusations that she had engaged in gross misconduct, Defendant Foy abandoned her employment with Plaintiff IHB and did not attempt to accomplish any further work for IHB.

97.     Based on Defendant Foy's abandonment of her position, and the evidence strongly suggesting that Defendant Foy had taken part in an effort to steal IHB trade secrets, including the IHB Formulation and the IHB Email List, Plaintiff IHB terminated Defendant Foy's employment effective October 17, 2023, by letter transmitted via email on October 22, 2023.

98.     Defendant Foy's employment agreement stated:

7. TERMINATION

The parties understand and acknowledge that Employee's service is at will. This Contract may be terminated at any time by Employer for any reason or no reason.

*See* **Exhibit 1**, Employment Agreement.

99.     Defendant Foy violated her duties of employment outlined in Section 3 of her employment contract which states:

3. DUTIES OF EMPLOYEE

The Employee shall faithfully and competently render services to the Employer, producing timely and satisfactory work in a trustworthy, loyal, and efficient manner. The Employee shall, at all times, act in a manner consistent with the best interests of the Employer. The principal place of employment is based in Boca Raton, Florida. The Employee shall comply with all the Employer's policies, as amended from time to time. The Employee shall not engage in any other employment or business activity without the prior written consent of the Company.

*See* **Exhibit 1**, Employment Agreement.

100.    On November 9, 2023, Defendant Foy filed a Charge of Discrimination with the Florida Commission on Human Relations and the U.S. Equal Employment Opportunity Commission alleging a claim of discrimination against Plaintiff IHB. *See* **Exhibit 2**, Charge of Discrimination.

101.    Specifically, Defendant Foy alleged in her Charge of Discrimination:

The Charging Party, female, was employed by the Respondent since July of 2022. Around August of 2022 Peter Gillooly was hired as the COO despite lacking the qualifications or experience for this position. By January of 2023, the Charging Party started receiving differential treatment being the only female executive aside from the physicians. Charging party was complaining, via email, how Mr. Gillooly was belittling her. Nevertheless, the Charging Party working tirelessly to try to receive a promotion, despite Respondent hiring males with half of her credentials who were receiving larger titles. By August of 2023, the Charging Party was eventually moved to the title of COO but never received the corresponding pay package. Subsqequently [sic], Charging Party learned that Mr. Gillooly called her a "Bitch" on a group zoom meeting with other male employees. On October 18, 2023, the Charging Party's emails were cut off with no communication, effectively ending her employment.

The Charging party was discriminated against based upon sex in violation of both Title VII of the Civil Rights Act and the Florida Civil Rights Act of 1992.

*See* **Exhibit 2**, Charge of Discrimination.

102.    The allegations of discrimination made by Defendant Foy against Plaintiff IHB in her Charge of Discrimination are untrue.

103.    Defendant Foy's sex had nothing to do with the reason she was terminated.

104.    Defendant Foy did not receive any differential treatment on account of her sex. Moreover, Defendant Foy was not the only female executive.

105.    Defendant Foy was not entitled to an increase in pay when redesignated COO as she was already the highest-paid employee.

106.    Defendant Foy was never under the supervision of Mr. Gillooly, who worked for a different company.

107.    Plaintiff IHB filed its Verified Position Statement in response to the Charge of Discrimination on December 11, 2023.

108.    To-date, the Charge of Discrimination has not been resolved and remains pending.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### Violation of the Defend Trade Secrets Act (DTSA) – IHB Formulation
### (Against all Defendants)

109.    Plaintiff incorporates the allegations of paragraphs 1 to 108 above as if fully set forth herein.

110.    Plaintiff IHB owns the formulation for the IHB Formulation, which IHB developed with the intention to market for sale throughout the United States on its website which is accessible to the public on the Internet.

111.    The IHB Formulation is and was a trade secret within the meaning of 18 U.S.C. § 1839(3).

112.    Plaintiff IHB has taken reasonable measures to keep the IHB Formulation secret, including but not limited to by requiring employees to enter into agreements to keep the IHB

Formulation secret and by securing access to the formulation both physically and through cybersecurity measures.

113.    Plaintiff IHB derives independent economic value from its proprietary formulations.

114.    Plaintiff IHB expected to derive independent economic value from the IHB Formulation.

115.    Plaintiff IHB had the potential to derive independent economic value from the IHB Formulation.

116.    The independent economic value, actual or potential, from the IHB Formulation is derived from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

117.    Defendant Foy had knowledge of the IHB Formulation by nature of her employment with IHB and had a duty to maintain secrecy over the IHB Formulation.

118.    Defendant Foy used the IHB Formulation for her own economic gain.

119.    Defendant Foy disclosed the IHB Formulation to Defendants KCM Brands and Kaufman and other third parties without authorization.

120.    Defendants KCM Brands and Kaufman knew Defendant Foy had a duty to maintain secrecy over the IHB Formulation.

121.    Despite their knowledge that Defendant Foy had a duty to maintain secrecy over the IHB Formulation, Defendants KCM Brands and Kaufman encouraged Defendant Foy to violate her duty to keep the IHB Formulation secret.

122.    Despite their knowledge that Defendant Foy had a duty to maintain secrecy over the IHB Formulation, Defendants KCM Brands and Kaufman used the IHB Formulation for their own economic gain.

123.    Despite their knowledge that Defendant Foy had a duty to maintain secrecy over the IHB Formulation, Defendants KCM Brands and Kaufman disclosed the IHB Formulation to third parties without authorization.

124.    As a result of Defendants' actions in misappropriating the IHB Formulation, Plaintiff IHB has been harmed and will continue to be harmed.

**SECOND CLAIM FOR RELIEF**
**Violation of the Florida Uniform Trade Secrets Act (FUTSA) – IHB Formulation**
**(Against all Defendants)**

125.    Plaintiff incorporates the allegations of paragraphs 1 to 108 above as if fully set forth herein.

126.    Plaintiff IHB owns the formulation for the IHB Formulation, which IHB developed with the intention to market for sale throughout the United States on its website which is accessible to the public on the Internet.

127.    The IHB Formulation is and was a trade secret within the meaning of Fla. Stat. § 688.002(4).

128.    Plaintiff IHB has taken reasonable measures to keep the IHB Formulation secret, including but not limited to by requiring employees to enter into agreements to keep the IHB Formulation secret and by securing access to the formulation both physically and through cybersecurity measures.

129.    Plaintiff IHB derives independent economic value from its proprietary formulations.

130.    Plaintiff IHB expected to derive independent economic value from the IHB Formulation.

131.    Plaintiff IHB had the potential to derive independent economic value from the IHB Formulation.

132.    The independent economic value, actual or potential, from the IHB Formulation is derived from not being generally known to, and not being readily ascertainable through proper

means by, another person who can obtain economic value from the disclosure or use of the information.

133.    Defendant Foy had knowledge of the IHB Formulation by nature of her employment with IHB and had a duty to maintain secrecy over the IHB Formulation.

134.    Defendant Foy used the IHB Formulation for her own economic gain.

135.    Defendant Foy disclosed the IHB Formulation to Defendants KCM Brands and Kaufman and other third parties without authorization.

136.    Defendants KCM Brands and Kaufman knew Defendant Foy had a duty to maintain secrecy over the IHB Formulation.

137.    Despite their knowledge that Defendant Foy had a duty to maintain secrecy over the IHB Formulation, Defendants KCM Brands and Kaufman encouraged Defendant Foy to violate her duty to keep the IHB Formulation secret.

138.    Despite their knowledge that Defendant Foy had a duty to maintain secrecy over the IHB Formulation, Defendants KCM Brands and Kaufman used the IHB Formulation for their own economic gain.

139.    Despite their knowledge that Defendant Foy had a duty to maintain secrecy over the IHB Formulation, Defendants KCM Brands and Kaufman disclosed the IHB Formulation to third parties without authorization.

140.    As a result of Defendants' actions in misappropriating the IHB Formulation, Plaintiff IHB has been harmed and will continue to be harmed.

**THIRD CLAIM FOR RELIEF**
**Violation of the Defend Trade Secrets Act (DTSA) – IHB Email List**
**(Against all Defendants)**

141.    Plaintiff incorporates the allegations of paragraphs 1 to 108 above as if fully set forth herein.

142.    Over time, Plaintiff IHB developed a proprietary email list, the IHB Email List, comprised of IHB's customers and other individuals interested in products sold in the health and wellness industry.

143.    Plaintiff IHB used the IHB Email List to market its products to customers throughout the United States. Such products are available for sale on IHB's website which is accessible to the public on the Internet. IHB's products are available for purchase by customers throughout the United States.

144.    The IHB Email List is and was a trade secret within the meaning of 18 U.S.C. § 1839(3).

145.    Plaintiff IHB has taken reasonable measures to keep the IHB Email List secret, including but not limited to by requiring employees to enter into agreements to keep the IHB Email List secret and by securing access to the IHB Email List both physically and through cybersecurity measures.

146.    Plaintiff IHB derives independent economic value from its customers lists.

147.    Plaintiff IHB expected to derive independent economic value from the IHB Email List.

148.    Plaintiff IHB had the potential to derive independent economic value from the IHB Email List.

149.    The independent economic value, actual or potential, from the IHB Email List is derived from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

150.    Defendant Foy had access to the IHB Email List by nature of her employment with IHB and had a duty to maintain secrecy over the IHB Email List.

151.    Defendant Foy used the IHB Email List for her own economic gain.

152.    Defendant Foy disclosed the IHB Email List to Defendants KCM Brands and Kaufman and other third parties without authorization.

153.    Defendants KCM Brands and Kaufman knew Defendant Foy had a duty to maintain secrecy over the IHB Email List.

154.    Despite their knowledge that Defendant Foy had a duty to maintain secrecy over the IHB Email List, Defendants KCM Brands and Kaufman encouraged Defendant Foy to violate her duty to keep the IHB Email List secret.

155.    Despite their knowledge that Defendant Foy had a duty to maintain secrecy over the IHB Email List, Defendants KCM Brands and Kaufman used the IHB Email List for their own economic gain.

156.    Despite their knowledge that Defendant Foy had a duty to maintain secrecy over the IHB Email List, Defendants KCM Brands and Kaufman disclosed the IHB Email List to third parties without authorization.

157.    As a result of Defendants' actions in misappropriating the IHB Email List, Plaintiff IHB has been harmed and will continue to be harmed.

**FOURTH CLAIM FOR RELIEF**
**Violation of the Florida Uniform Trade Secrets Act (FUTSA) – IHB Email List**
**(Against all Defendants)**

158.    Plaintiff incorporates the allegations of paragraphs 1 to 108 above as if fully set forth herein.

159.    Over time, Plaintiff IHB developed a proprietary email list, the IHB Email List, comprised of IHB's customers and other individuals interested in products sold in the health and wellness industry.

160.    Plaintiff IHB used the IHB Email List to market its products to customers throughout the United States. Such products are available for sale on IHB's website which is accessible to the public on the Internet. IHB's products are available for purchase by customers throughout the United States.

161.    The IHB Email List is and was a trade secret within the meaning of Fla. Stat. § 688.002(4).

162.    Plaintiff IHB has taken reasonable measures to keep the IHB Email List secret, including but not limited to by requiring employees to enter into agreements to keep the IHB Email

List secret and by securing access to the IHB Email List both physically and through cybersecurity measures.

163.    Plaintiff IHB derives independent economic value from its customers lists.

164.    Plaintiff IHB expected to derive independent economic value from the IHB Email List.

165.    Plaintiff IHB had the potential to derive independent economic value from the IHB Email List.

166.    The independent economic value, actual or potential, from the IHB Email List is derived from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

167.    Defendant Foy had access to the IHB Email List by nature of her employment with IHB and had a duty to maintain secrecy over the IHB Email List.

168.    Defendant Foy used the IHB Email List for her own economic gain.

169.    Defendant Foy disclosed the IHB Email List to Defendants KCM Brands and Kaufman and other third parties without authorization.

170.    Defendants KCM Brands and Kaufman knew Defendant Foy had a duty to maintain secrecy over the IHB Email List.

171.    Despite their knowledge that Defendant Foy had a duty to maintain secrecy over the IHB Email List, Defendants KCM Brands and Kaufman encouraged Defendant Foy to violate her duty to keep the IHB Email List secret.

172.    Despite their knowledge that Defendant Foy had a duty to maintain secrecy over the IHB Email List, Defendants KCM Brands and Kaufman used the IHB Email List for their own economic gain.

173.    Despite their knowledge that Defendant Foy had a duty to maintain secrecy over the IHB Email List, Defendants KCM Brands and Kaufman disclosed the IHB Email List to third parties without authorization.

174.    As a result of Defendants' actions in misappropriating the IHB Email List, Plaintiff IHB has been harmed and will continue to be harmed.

### FIFTH CLAIM FOR RELIEF
### Violation of the Defend Trade Secrets Act (DTSA) – Spike + Reset Business Plan
### (Against all Defendants)

175.    Plaintiff incorporates the allegations of paragraphs 1 to 108 above as if fully set forth herein.

176.    Over time, Plaintiff IHB has expended significant resources in hiring, training, and retaining employees who have a faculty for creating and developing successful brands and products in the holistic health supplement market.

177.    Plaintiff IHB considers the creation and development of new brands and products within the holistic health supplement market to be highly confidential and proprietary business plans ("Business Plans").

178.    Plaintiff IHB expends significant resources in researching and studying the holistic health supplement market so that it can develop new Business Plans.

179.    Plaintiff IHB derives significant value from its highly confidential and proprietary Business Plans, which are key to the company's growth and the company's expansion into new niches within their market.

180.    Plaintiff IHB's employees utilize IHB's confidential sales data, market research, customer feedback, and other highly valuable proprietary information to develop new Business Plans.

181.    Plaintiff IHB's employees develop new Business Plans using this confidential and proprietary information within the course and scope of their employment with IHB.

182.    Defendant Foy was previously employed as Plaintiff IHB's Vice President of Operations and Brands and was eventually promoted to Chief Operating Officer.

183.    During her employment with Plaintiff IHB, Defendant Foy was responsible for developing new Business Plans to launch on behalf of IHB and its related entities.

184.    For the purpose of developing new Business Plans on behalf of Plaintiff IHB, Defendant Foy was exposed to IHB's confidential sales data, market research, customer feedback, and other highly valuable proprietary information to assist her in developing those Business Plans.

185.    As Plaintiff IHB's Vice President of Operations and Brands and later as Chief Operating Officer, Defendant Foy was expected to utilize IHB's confidential sales data, market research, customer feedback, and other highly valuable proprietary information to develop new Business Plans for IHB and its related entities.

186.    During her employment by Plaintiff IHB, Defendant Foy did actually utilize IHB's confidential sales data, market research, customer feedback, and other highly valuable proprietary information to develop new Business Plans for IHB and its related entities.

187.    Upon information and belief, within the course and scope of her employment by Plaintiff IHB, Defendant Foy developed a Business Plan for the Spike + Reset brand, including both the positioning of that brand within the market and the products the brand would offer (the "Spike + Reset Business Plan").

188.    Upon information and belief, Defendant Foy created the Spike + Reset Business Plan while utilizing Plaintiff IHB's confidential sales data, market research, customer feedback, and other highly valuable proprietary information.

189.    Upon information and belief, but for Defendant Foy's exposure to Plaintiff IHB's confidential sales data, market research, customer feedback, and other highly valuable proprietary information, she would not have been able to develop the Spike + Reset Business Plan.

190.    The business plans developed by Plaintiff IHB employees within the course and scope of their employment are trades secret within the meaning of 18 U.S.C. § 1839(3).

191.    The Spike + Reset Business Plan is and was a trade secret within the meaning of 18 U.S.C. § 1839(3).

192.    Plaintiff IHB has taken reasonable measures to keep its Business Plans secret, including but not limited to by requiring employees to enter into agreements to keep the business

plans secret and by securing access to the formulation both physically and through cybersecurity measures.

193.    Plaintiff IHB derives independent economic value from its Business Plans.

194.    Plaintiff IHB expected to derive independent economic value from any Business Plans created by any IHB employee within the course and scope of their employment, including the Spike + Reset Business Plan.

195.    Plaintiff IHB had the potential to derive independent economic value from the Spike + Reset Business Plan.

196.    The independent economic value, actual or potential, from the Spike + Reset Business Plan is derived from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

197.    Defendant Foy had access to the Spike + Reset Business Plan by nature of her employment with IHB and had a duty to maintain secrecy over the Spike + Reset Business Plan.

198.    Defendant Foy used the Spike + Reset Business Plan for her own economic gain.

199.    Defendant Foy disclosed the Spike + Reset Business Plan to Defendants KCM Brands and Kaufman and other third parties without authorization.

200.    Defendants KCM Brands and Kaufman knew Defendant Foy had a duty to maintain secrecy over the Spike + Reset Business Plan.

201.    Despite their knowledge that Defendant Foy had a duty to maintain secrecy over the Spike + Reset Business Plan, Defendants KCM Brands and Kaufman encouraged Defendant Foy to violate her duty to keep the Spike + Reset Business Plan secret.

202.    Despite their knowledge that Defendant Foy had a duty to maintain secrecy over the Spike + Reset Business Plan, Defendants KCM Brands and Kaufman used the Spike + Reset Business Plan for their own economic gain.

203.    Despite their knowledge that Defendant Foy had a duty to maintain secrecy over the Spike + Reset Business Plan, Defendants KCM Brands and Kaufman disclosed the Spike + Reset Business Plan to third parties without authorization.

204.    As a result of Defendants' actions in misappropriating the Spike + Reset Business Plan, Plaintiff IHB has been harmed and will continue to be harmed.

**SIXTH CLAIM FOR RELIEF**
**Violation of the Florida Uniform Trade Secrets Act (FUTSA) – Spike + Reset Business Plan**
**(Against all Defendants)**

205.    Plaintiff incorporates the allegations of paragraphs 1 to 108 above as if fully set forth herein.

206.    Over time, Plaintiff IHB has expended significant resources in hiring, training, and retaining employees who have a faculty for creating and developing successful brands and products in the holistic health supplement market.

207.    Plaintiff IHB considers the creation and development of new brands and products within the holistic health supplement market to be highly confidential and proprietary business plans ("Business Plans").

208.    Plaintiff IHB expends significant resources in researching and studying the holistic health supplement market so that it can develop new Business Plans.

209.    Plaintiff IHB derives significant value from its highly confidential and proprietary Business Plans, which are key to the company's growth and the company's expansion into new niches within their market.

210.    Plaintiff IHB's employees utilize IHB's confidential sales data, market research, customer feedback, and other highly valuable proprietary information to develop new Business Plans.

211.    Plaintiff IHB's employees develop new Business Plans using this confidential and proprietary information within the course and scope of their employment with IHB.

212.     Defendant Foy was previously employed as Plaintiff IHB's Vice President of Operations and Brands and was eventually promoted to Chief Operating Officer.

213.     During her employment with Plaintiff IHB, Defendant Foy was responsible for developing new Business Plans to launch on behalf of IHB and its related entities.

214.     For the purpose of developing new Business Plans on behalf of Plaintiff IHB, Defendant Foy was exposed to IHB's confidential sales data, market research, customer feedback, and other highly valuable proprietary information to assist her in developing those Business Plans.

215.     As Plaintiff IHB's Vice President of Operations and Brands and later as Chief Operating Officer, Defendant Foy was expected to utilize IHB's confidential sales data, market research, customer feedback, and other highly valuable proprietary information to develop new Business Plans for IHB and its related entities.

216.     During her employment by Plaintiff IHB, Defendant Foy did actually utilize IHB's confidential sales data, market research, customer feedback, and other highly valuable proprietary information to develop new Business Plans for IHB and its related entities.

217.     Upon information and belief, within the course and scope of her employment by Plaintiff IHB, Defendant Foy developed a Business Plan for the Spike + Reset brand, including both the positioning of that brand within the market and the products the brand would offer (the "Spike + Reset Business Plan").

218.     Upon information and belief, Defendant Foy created the Spike + Reset Business Plan while utilizing Plaintiff IHB's confidential sales data, market research, customer feedback, and other highly valuable proprietary information.

219.     Upon information and belief, but for Defendant Foy's exposure to Plaintiff IHB's confidential sales data, market research, customer feedback, and other highly valuable proprietary information, she would not have been able to develop the Spike + Reset Business Plan.

220.     The business plans developed by Plaintiff IHB employees within the course and scope of their employment are trades secret within the meaning of Fla. Stat. § 688.002(4).

221.     The Spike + Reset Business Plan is and was a trade secret within the meaning of Fla. Stat. § 688.002(4).

222.     Plaintiff IHB has taken reasonable measures to keep its Business Plans secret, including but not limited to by requiring employees to enter into agreements to keep the business plans secret and by securing access to the formulation both physically and through cybersecurity measures.

223.     Plaintiff IHB derives independent economic value from its Business Plans.

224.     Plaintiff IHB expected to derive independent economic value from any Business Plans created by any IHB employee within the course and scope of their employment, including the Spike + Reset Business Plan.

225.     Plaintiff IHB had the potential to derive independent economic value from the Spike + Reset Business Plan.

226.     The independent economic value, actual or potential, from the Spike + Reset Business Plan is derived from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

227.     Defendant Foy had access to the Spike + Reset Business Plan by nature of her employment with IHB and had a duty to maintain secrecy over the Spike + Reset Business Plan.

228.     Defendant Foy used the Spike + Reset Business Plan for her own economic gain.

229.     Defendant Foy disclosed the Spike + Reset Business Plan to Defendants KCM Brands and Kaufman and other third parties without authorization.

230.     Defendants KCM Brands and Kaufman knew Defendant Foy had a duty to maintain secrecy over the Spike + Reset Business Plan.

231.     Despite their knowledge that Defendant Foy had a duty to maintain secrecy over the Spike + Reset Business Plan, Defendants KCM Brands and Kaufman encouraged Defendant Foy to violate her duty to keep the Spike + Reset Business Plan secret.

232.    Despite their knowledge that Defendant Foy had a duty to maintain secrecy over the Spike + Reset Business Plan, Defendants KCM Brands and Kaufman used the Spike + Reset Business Plan for their own economic gain.

233.    Despite their knowledge that Defendant Foy had a duty to maintain secrecy over the Spike + Reset Business Plan, Defendants KCM Brands and Kaufman disclosed the Spike + Reset Business Plan to third parties without authorization.

234.    As a result of Defendants' actions in misappropriating the Spike + Reset Business Plan, Plaintiff IHB has been harmed and will continue to be harmed.

## SEVENTH CLAIM FOR RELIEF
### Violation of the Defend Trade Secrets Act (DTSA) – Renuology Business Plan
### (Against all Defendants)

235.    Plaintiff incorporates the allegations of paragraphs 1 to 108 above as if fully set forth herein.

236.    Over time, Plaintiff IHB has expended significant resources in hiring, training, and retaining employees who have a faculty for creating and developing successful brands and products in the holistic health supplement market.

237.    Plaintiff IHB considers the creation and development of new brands and products within the holistic health supplement market to be highly confidential and proprietary business plans ("Business Plans").

238.    Plaintiff IHB expends significant resources in researching and studying the holistic health supplement market so that it can develop new Business Plans.

239.    Plaintiff IHB derives significant value from its highly confidential and proprietary Business Plans, which are key to the company's growth and the company's expansion into new niches within their market.

240.    Plaintiff IHB's employees utilize IHB's confidential sales data, market research, customer feedback, and other highly valuable proprietary information to develop new Business Plans.

241.    Plaintiff IHB's employees develop new Business Plans using this confidential and proprietary information within the course and scope of their employment with IHB.

242.    Defendant Foy was previously employed as Plaintiff IHB's Vice President of Operations and Brands and was eventually promoted to Chief Operating Officer.

243.    During her employment with Plaintiff IHB, Defendant Foy was responsible for developing new Business Plans to launch on behalf of IHB and its related entities.

244.    For the purpose of developing new Business Plans on behalf of Plaintiff IHB, Defendant Foy was exposed to IHB's confidential sales data, market research, customer feedback, and other highly valuable proprietary information to assist her in developing those Business Plans.

245.    As Plaintiff IHB's Vice President of Operations and Brands and later as Chief Operating Officer, Defendant Foy was expected to utilize IHB's confidential sales data, market research, customer feedback, and other highly valuable proprietary information to develop new Business Plans for IHB and its related entities.

246.    During her employment by Plaintiff IHB, Defendant Foy did actually utilize IHB's confidential sales data, market research, customer feedback, and other highly valuable proprietary information to develop new Business Plans for IHB and its related entities.

247.    Upon information and belief, within the course and scope of her employment by Plaintiff IHB, Defendant Foy developed a Business Plan for the Renuology brand, including both the positioning of that brand within the market and the products the brand would offer (the "Renuology Business Plan").

248.    Upon information and belief, Defendant Foy created the Renuology Business Plan while utilizing Plaintiff IHB's confidential sales data, market research, customer feedback, and other highly valuable proprietary information.

249.    Upon information and belief, but for Defendant Foy's exposure to Plaintiff IHB's confidential sales data, market research, customer feedback, and other highly valuable proprietary information, she would not have been able to develop the Renuology Business Plan.

250.    The business plans developed by Plaintiff IHB employees within the course and scope of their employment are trades secret within the meaning of 18 U.S.C. § 1839(3).

251.    The Renuology Business Plan is and was a trade secret within the meaning of 18 U.S.C. § 1839(3).

252.    Plaintiff IHB has taken reasonable measures to keep its Business Plans secret, including but not limited to by requiring employees to enter into agreements to keep the business plans secret and by securing access to the formulation both physically and through cybersecurity measures.

253.    Plaintiff IHB derives independent economic value from its Business Plans.

254.    Plaintiff IHB expected to derive independent economic value from any Business Plans created by any IHB employee within the course and scope of their employment, including the Renuology Business Plan.

255.    Plaintiff IHB had the potential to derive independent economic value from the Renuology Business Plan.

256.    The independent economic value, actual or potential, from the Renuology Business Plan is derived from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

257.    Defendant Foy had access to the Renuology Business Plan by nature of her employment with IHB and had a duty to maintain secrecy over the Renuology Business Plan.

258.    Defendant Foy used the Renuology Business Plan for her own economic gain.

259.    Defendant Foy disclosed the Renuology Business Plan to Defendants KCM Brands and Kaufman and other third parties without authorization.

260.    Defendants KCM Brands and Kaufman knew Defendant Foy had a duty to maintain secrecy over the Renuology Business Plan.

261.    Despite their knowledge that Defendant Foy had a duty to maintain secrecy over the Renuology Business Plan, Defendants KCM Brands and Kaufman encouraged Defendant Foy to violate her duty to keep the Renuology Business Plan secret.

262.    Despite their knowledge that Defendant Foy had a duty to maintain secrecy over the Renuology Business Plan, Defendants KCM Brands and Kaufman used the Renuology Business Plan for their own economic gain.

263.    Despite their knowledge that Defendant Foy had a duty to maintain secrecy over the Renuology Business Plan, Defendants KCM Brands and Kaufman disclosed the Renuology Business Plan to third parties without authorization.

264.    As a result of Defendants' actions in misappropriating the Renuology Business Plan, Plaintiff IHB has been harmed and will continue to be harmed.

### EIGHTH CLAIM FOR RELIEF
**Violation of the Florida Uniform Trade Secrets Act (FUTSA) – Renuology Business Plan
(Against all Defendants)**

265.    Plaintiff incorporates the allegations of paragraphs 1 to 108 above as if fully set forth herein.

266.    Over time, Plaintiff IHB has expended significant resources in hiring, training, and retaining employees who have a faculty for creating and developing successful brands and products in the holistic health supplement market.

267.    Plaintiff IHB considers the creation and development of new brands and products within the holistic health supplement market to be highly confidential and proprietary business plans ("Business Plans").

268.    Plaintiff IHB expends significant resources in researching and studying the holistic health supplement market so that it can develop new Business Plans.

269.    Plaintiff IHB derives significant value from its highly confidential and proprietary Business Plans, which are key to the company's growth and the company's expansion into new niches within their market.

270.    Plaintiff IHB's employees utilize IHB's confidential sales data, market research, customer feedback, and other highly valuable proprietary information to develop new Business Plans.

271.    Plaintiff IHB's employees develop new Business Plans using this confidential and proprietary information within the course and scope of their employment with IHB.

272.    Defendant Foy was previously employed as Plaintiff IHB's Vice President of Operations and Brands and was eventually promoted to Chief Operating Officer.

273.    During her employment with Plaintiff IHB, Defendant Foy was responsible for developing new Business Plans to launch on behalf of IHB and its related entities.

274.    For the purpose of developing new Business Plans on behalf of Plaintiff IHB, Defendant Foy was exposed to IHB's confidential sales data, market research, customer feedback, and other highly valuable proprietary information to assist her in developing those Business Plans.

275.    As Plaintiff IHB's Vice President of Operations and Brands and later as Chief Operating Officer, Defendant Foy was expected to utilize IHB's confidential sales data, market research, customer feedback, and other highly valuable proprietary information to develop new Business Plans for IHB and its related entities.

276.    During her employment by Plaintiff IHB, Defendant Foy did actually utilize IHB's confidential sales data, market research, customer feedback, and other highly valuable proprietary information to develop new Business Plans for IHB and its related entities.

277.    Upon information and belief, within the course and scope of her employment by Plaintiff IHB, Defendant Foy developed a Business Plan for the Renuology brand, including both the positioning of that brand within the market and the products the brand would offer (the "Renuology Business Plan").

278.    Upon information and belief, Defendant Foy created the Renuology Business Plan while utilizing Plaintiff IHB's confidential sales data, market research, customer feedback, and other highly valuable proprietary information.

279.     Upon information and belief, but for Defendant Foy's exposure to Plaintiff IHB's confidential sales data, market research, customer feedback, and other highly valuable proprietary information, she would not have been able to develop the Renuology Business Plan.

280.     The business plans developed by Plaintiff IHB employees within the course and scope of their employment are trades secret within the meaning of Fla. Stat. § 688.002(4).

281.     The Renuology Business Plan is and was a trade secret within the meaning of Fla. Stat. § 688.002(4).

282.     Plaintiff IHB has taken reasonable measures to keep its Business Plans secret, including but not limited to by requiring employees to enter into agreements to keep the business plans secret and by securing access to the formulation both physically and through cybersecurity measures.

283.     Plaintiff IHB derives independent economic value from its Business Plans.

284.     Plaintiff IHB expected to derive independent economic value from any Business Plans created by any IHB employee within the course and scope of their employment, including the Renuology Business Plan.

285.     Plaintiff IHB had the potential to derive independent economic value from the Renuology Business Plan.

286.     The independent economic value, actual or potential, from the Renuology Business Plan is derived from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

287.     Defendant Foy had access to the Renuology Business Plan by nature of her employment with IHB and had a duty to maintain secrecy over the Renuology Business Plan.

288.     Defendant Foy used the Renuology Business Plan for her own economic gain.

289.     Defendant Foy disclosed the Renuology Business Plan to Defendants KCM Brands and Kaufman and other third parties without authorization.

290.     Defendants KCM Brands and Kaufman knew Defendant Foy had a duty to maintain secrecy over the Renuology Business Plan.

291.     Despite their knowledge that Defendant Foy had a duty to maintain secrecy over the Renuology Business Plan, Defendants KCM Brands and Kaufman encouraged Defendant Foy to violate her duty to keep the Renuology Business Plan secret.

292.     Despite their knowledge that Defendant Foy had a duty to maintain secrecy over the Renuology Business Plan, Defendants KCM Brands and Kaufman used the Renuology Business Plan for their own economic gain.

293.     Despite their knowledge that Defendant Foy had a duty to maintain secrecy over the Renuology Business Plan, Defendants KCM Brands and Kaufman disclosed the Renuology Business Plan to third parties without authorization.

294.     As a result of Defendants' actions in misappropriating the Renuology Business Plan, Plaintiff IHB has been harmed and will continue to be harmed.

### NINTH CLAIM FOR RELIEF
### Breach of Contract
### (Against Defendant Foy)

295.     Plaintiff incorporates the allegations of paragraphs 1 to 108 above as if fully set forth herein.

296.     Plaintiff IHB and Defendant Foy entered into a valid contract concerning Foy's employment by IHB.

297.     The contract of employment between IHB and Foy required Foy to maintain confidentiality of IHB's proprietary information and to hold such confidential information in a fiduciary capacity for the benefit of IHB.

298.     Defendant Foy breached the contract of employment between IHB and Foy by disclosing IHB's confidential information to third parties without authorization and by using that confidential information for her own economic gain.

299.     Defendant Foy breached the confidentiality clause of her contract of employment by using the IHB Formulation for her own economic gain and by disclosing the IHB Formulation to third parties without authorization.

300.     Defendant Foy breached the confidentiality clause of her contract of employment by using the IHB Email List for her own economic gain and by disclosing the IHB Email List to third parties without authorization.

301.     Defendant Foy breached the confidentiality clause of her contract of employment by using the business plan for the Spike + Reset brand, which she developed within the course and scope of her employment, and which she created for IHB based upon her knowledge and use of IHB's confidential information, intellectual property, and trade secrets, for her own economic gain and by disclosing the business plan for the Spike + Reset brand to third parties without authorization.

302.     Defendant Foy breached the confidentiality clause of her contract of employment by using the business plan for the Renuology brand, which she developed within the course and scope of her employment, and which she created for IHB based upon her knowledge and use of IHB's confidential information, intellectual property, and trade secrets, for her own economic gain and by disclosing the business plan for the Renuology brand to third parties without authorization.

303.     The contract of employment between IHB and Foy required Foy to not engage in any other employment or business activity without the prior written consent of IHB.

304.     In violation of the contract of employment between IHB and Foy, Foy did engage in employment and/or business activity without the prior written consent of IHB by forming and engaging in business activities through KCM Brands, LLC and its sale of products directly competing with Plaintiff IHB, including but not limited to the sale of products through the Spike + Reset and/or Renuology brands.

305.     The contract of employment between IHB and Foy required Foy to faithfully and competently render services to IHB, producing timely and satisfactory work in a trustworthy, loyal, and efficient manner, and at all times to act in a manner consistent with the best interests of IHB.

306.    In violation of the contract of employment between IHB and Foy, Foy acted unfaithfully and disloyally in misappropriating business plans she created within the course and scope of her employment with IHB, including the business plans to create and launch Spike + Reset and Renuology, and used those business plans for her own pecuniary gain, depriving IHB of the fruits of its investments.

307.    The contract of employment between IHB and Foy required Foy to refrain from inducing or attempting to induce customers, suppliers, and other third parties to cease doing business with IHB during her employment with IHB and for a period of one year after termination of her contract of employment with IHB.

308.    In violation of the contract of employment between IHB and Foy, Foy launched two business, Spike + Reset and Renuology, either during the term of her employment with IHB or within one year of the termination of her contract of employment, knowing and/or intending that by launching those brands, customers of IHB and its related entities would be induced to cease doing business with IHB and its related entities in favor of purchasing products from either Spike + Reset or Renuology.

309.    These violations of the employment agreement between IHB and Foy were material breaches of the agreement.

310.    As a result of Defendant Foy's breaches of her employment agreement with Plaintiff IHB, IHB has suffered damages.

**TENTH CLAIM FOR RELIEF**
**Tortious Interference with a Business Relationship**
**(Against Defendants Michael L. Kaufman and KCM Brands, LLC)**

311.    Plaintiff incorporates the allegations of paragraphs 1 to 108 above as if fully set forth herein.

312.    Plaintiff IHB and Defendant Foy entered into a valid contract concerning Foy's employment by IHB.

313.    Defendants KCM Brands and Kaufmann had actual or constructive knowledge of a business relationship between Plaintiff IHB and Defendant Foy in the form of the contract of employment between IHB and Foy.

314.    The contract of employment between IHB and Foy required Foy to maintain confidentiality of IHB's proprietary information.

315.    Defendants KCM Brands and Kaufmann knew that the contract of employment between IHB and Foy required Foy to maintain confidentiality of IHB's proprietary information.

316.    Defendant Foy breached the contract of employment between IHB and Foy by disclosing IHB's confidential information to third parties without authorization and by using that confidential information for her own economic gain.

317.    Defendants KCM Brands and Kaufmann intentionally and unjustifiably interfered with the relationship between IHB and Foy by assisting, inducing, and/or encouraging Defendant Foy to breach the contract of employment between IHB and Foy by disclosing IHB's confidential information to third parties without authorization and by using that confidential information for their own economic gain.

318.    Defendant Foy breached the confidentiality clause of her contract of employment by using the IHB Formulation for her own economic gain and by disclosing the IHB Formulation to third parties without authorization.

319.    Defendants KCM Brands and Kaufmann intentionally and unjustifiably interfered with the relationship between IHB and Foy by assisting, inducing, and/or encouraging Defendant Foy in breaching the confidentiality clause of Foy's contract of employment by using the IHB Formulation for their own economic gain and by disclosing the IHB Formulation to third parties without authorization.

320.    Defendant Foy breached the confidentiality clause of her contract of employment by using the IHB Email List for her own economic gain and by disclosing the IHB Email List to third parties without authorization.

321.    Defendants KCM Brands and Kaufmann intentionally and unjustifiably interfered with the relationship between IHB and Foy by assisting, inducing, and/or encouraging Defendant Foy in breaching the confidentiality clause of Foy's contract of employment by using the IHB Email List for their own economic gain and by disclosing the IHB Email List to third parties without authorization.

322.    Defendant Foy breached the confidentiality clause of her contract of employment by using the business plan for the Spike + Reset brand, which she developed within the course and scope of her employment, and which she created for IHB based upon her knowledge and use of IHB's confidential information, intellectual property, and trade secrets, for her own economic gain and by disclosing the business plan for the Spike + Reset brand to third parties without authorization.

323.    Defendants KCM Brands and Kaufmann intentionally and unjustifiably interfered with the relationship between IHB and Foy by assisting, inducing, and/or encouraging Defendant Foy in breaching the confidentiality clause of Foy's contract of employment by using the business plan for the Spike + Reset brand, which she developed within the course and scope of her employment, and which she created for IHB based upon her knowledge and use of IHB's confidential information, intellectual property, and trade secrets, for her own economic gain and by disclosing the business plan for the Spike + Reset brand to third parties without authorization.

324.    Defendant Foy breached the confidentiality clause of her contract of employment by using the business plan for the Renuology brand, which she developed within the course and scope of her employment, and which she created for IHB based upon her knowledge and use of IHB's confidential information, intellectual property, and trade secrets, for her own economic gain and by disclosing the business plan for the Renuology brand to third parties without authorization.

325.    Defendants KCM Brands and Kaufmann intentionally and unjustifiably interfered with the relationship between IHB and Foy by assisting, inducing, and/or encouraging Defendant Foy in breaching the confidentiality clause of Foy's contract of employment by using the business plan for the Renuology brand, which she developed within the course and scope of her

employment, and which she created for IHB based upon her knowledge and use of IHB's confidential information, intellectual property, and trade secrets, for her own economic gain and by disclosing the business plan for the Renuology brand to third parties without authorization.

326.    The contract of employment between IHB and Foy required Foy to not engage in any other employment or business activity without the prior written consent of IHB.

327.    Defendants KCM Brands and Kaufmann knew that the contract of employment between IHB and Foy required Foy to not engage in any other employment or business activity without the prior written consent of IHB.

328.    In violation of the contract of employment between IHB and Foy, Foy did engage in employment and/or business activity without the prior written consent of IHB by forming and engaging in business activities through KCM Brands, LLC and its sale of products directly competing with Plaintiff IHB, including but not limited to the sale of products through the Spike + Reset brand and through the Renuology brand.

329.    Defendants KCM Brands and Kaufmann substantially intentionally and unjustifiably interfered with the relationship between IHB and Foy by assisting, inducing, and/or encouraging Defendant Foy in breaching the contract of employment between IHB and Foy by engaging in employment and/or business activity without the prior written consent of IHB by forming and engaging in business activities through KCM Brands, LLC and its sale of products directly competing with Plaintiff IHB, including but not limited to the sale of products through the Spike + Reset brand and through the Renuology brand.

330.    The contract of employment between IHB and Foy required Foy to faithfully and competently render services to IHB, producing timely and satisfactory work in a trustworthy, loyal, and efficient manner, and at all times to act in a manner consistent with the best interests of IHB.

331.    Defendants KCM Brands and Kaufmann knew that the contract of employment between IHB and Foy required Foy to faithfully and competently render services to IHB, producing timely and satisfactory work in a trustworthy, loyal, and efficient manner, and at all times to act in a manner consistent with the best interests of IHB.

332.     In violation of the contract of employment between IHB and Foy, Foy acted unfaithfully and disloyally in misappropriating business plans she created within the course and scope of her employment with IHB, including the business plans to create and launch Spike + Reset and Renuology, and used those business plans for her own pecuniary gain, depriving IHB of the fruits of its investments.

333.     Defendants KCM Brands and Kaufmann intentionally and unjustifiably interfered with the relationship between IHB and Foy by assisting, inducing, and/or encouraging Defendant Foy in breaching the contract of employment between IHB and Foy by acting unfaithfully and disloyally in misappropriating business plans she created within the course and scope of her employment with IHB, including the business plans to create and launch Spike + Reset and Renuology, and using those business plans for her own pecuniary gain, depriving IHB of the fruits of its investments.

334.     The contract of employment between IHB and Foy required Foy to refrain from inducing or attempting to induce customers, suppliers, and other third parties to cease doing business with IHB during her employment with IHB and for a period of one year after termination of her contract of employment with IHB.

335.     Defendants KCM Brands and Kaufmann knew that the contract of employment between IHB and Foy required Foy to refrain from inducing or attempting to induce customers, suppliers, and other third parties to cease doing business with IHB during her employment with IHB and for a period of one year after termination of her contract of employment with IHB.

336.     In violation of the contract of employment between IHB and Foy, Foy launched two business, Spike + Reset and Renuology, either during the term of her employment with IHB or within one year of the termination of her contract of employment, knowing and/or intending that by launching those brands, customers of IHB and its related entities would be induced to cease doing business with IHB and its related entities in favor of purchasing products from either Spike + Reset or Renuology.

337.     Defendants KCM Brands and Kaufmann intentionally and unjustifiably interfered with the relationship between IHB and Foy by assisting, inducing, and/or encouraging Defendant Foy in breaching the contract of employment between IHB and Foy by encouraging and assisting Foy in launching two business, Spike + Reset and Renuology, either during the term of her employment with IHB or within one year of the termination of her contract of employment, knowing and/or intending that by launching those brands, customers of IHB and its related entities would be induced to cease doing business with IHB and its related entities in favor of purchasing products from either Spike + Reset or Renuology.

338.     These violations of the employment agreement between IHB and Foy were material breaches of the agreement.

339.     As a result of Defendant Foy's breaches of her employment agreement with Plaintiff IHB, IHB has suffered damages.

340.     As a result of Defendants KCM Brands and Kaufmann's intentional and unjustifiable interference with the relationship between IHB and Foy through their provision of encouragement, inducement, and/or assistance to Defendant Foy in breaching her employment agreement with Plaintiff IHB, IHB has suffered damages.

## ELEVENTH CLAIM FOR RELIEF
### Declaratory Judgment
### (Against Defendant Foy)

341.     Plaintiff incorporates the allegations of paragraphs 1 to 108 above as if fully set forth herein.

342.     Plaintiff IHB employed Defendant Foy from approximately June 16, 2022, to approximately October 17, 2022.

343.     During the course of Defendant Foy's employment with Plaintiff IHB, IHB discovered that Defendant Foy had engaged in gross misconduct in material breach of the employment agreement entered into between IHB and Foy.

344. Specifically, Plaintiff IHB discovered that Defendant Foy had engaged in outside employment and business activities in violation of her agreement, Defendant Foy had formed a company with the purpose of competing with Plaintiff IHB and was that company's CEO, Defendant Foy had stolen the IHB Formulation and used that formulation to compete with IHB, and Defendant Foy had stolen the IHB Email List and used that list to compete with IHB.

345. The contract of employment between IHB and Foy allowed IHB to terminate Foy's employment at any time with or without cause.

346. Each of these serious allegations were separately and independently grounds to terminate Defendant Foy's employment for cause.

347. After confronting Defendant Foy with the allegations of gross misconduct, Defendant Foy abandoned her employment with Plaintiff IHB.

348. Following Defendant Foy's abandonment, Plaintiff IHB formally terminated Defendant Foy's employment on or about October 22, 2023, effective October 17, 2023.

349. Despite Defendant Foy's termination for cause, Defendant Foy has alleged in a formal Charge of Discrimination before the Florida Commission on Human Relations and the U.S. Equal Employment Opportunity Commission that Plaintiff IHB discriminated against Defendant Foy based upon the basis of sex in violation of both Title VII of the Civil Rights Act and the Florida Civil Rights Act of 1992.

350. Plaintiff IHB did not discriminate against Defendant Foy based upon the basis of sex in violation of both Title VII of the Civil Rights Act and the Florida Civil Rights Act of 1992.

351. Defendant Foy has threatened to file a lawsuit against Plaintiff IHB to vindicate her claims that Plaintiff IHB discriminated against her.

352. Therefore, an actual controversy exists between Plaintiff IHB and Defendant Foy as to whether Plaintiff IHB discriminated against Defendant Foy upon the basis of sex in violation of both Title VII of the Civil Rights Act and the Florida Civil Rights Act of 1992.

353. In the absence of a declaration from the Court, Defendant Foy will file affirmative claims against Plaintiff IHB for employment discrimination.

354. Plaintiff IHB seeks a declaration from this Court that:

    a. Plaintiff IHB did not discriminate against Defendant Foy upon the basis of sex in violation of Title VII of the Civil Rights Act;

    b. Plaintiff IHB did not discriminate against Defendant Foy upon the basis of sex in violation of the Florida Civil Rights Act of 1992;

    c. Plaintiff IHB did not unlawfully discriminate against Defendant Foy on any other basis; and,

    d. Plaintiff IHB had cause to terminate Defendant Foy based upon her gross misconduct.

<u>**PRAYER FOR RELIEF**</u>

WHEREFORE, Plaintiff respectfully prays that the Court grant the following relief:

A.    Injunctive relief prohibiting Defendants Foy, Kaufman, KCM Brands, and their respective officers, agents, servants, employees, and/or all persons acting in concert or participation with them, or any of them, from using Plaintiff's trade secrets, including but not limited to the Spike + Reset brand business plan, the Renuology brand business plan, the IHB Formulation, and the IHB Email List, in commerce or in connection with any business or for any other purpose;

B.    An award of compensatory, consequential, statutory, and punitive damages to Plaintiff in an amount to be determined at trial;

C.    An Order disgorging any profits obtained by Defendants Foy, Kaufman, and KCM Brands from any revenue which may be attributable to the Spike + Reset brand, the Renuology brand, the "Immunity Reset Gummies," the IHB Formulation, or the IHB Email List;

D.    An Order disgorging any membership interest held by Defendant Foy in KCM Brands, LLC;

E.    A declaration from this Court, pursuant to 28 U.S.C. § 2201, that Plaintiff IHB did not discriminate against Defendant Foy upon the basis of sex in violation of Title VII of the Civil Rights Act;

F.      A declaration from this Court, pursuant to 28 U.S.C. § 2201, that Plaintiff IHB did not discriminate against Defendant Foy upon the basis of sex in violation of the Florida Civil Rights Act of 1992;

G.      A declaration from this Court, pursuant to 28 U.S.C. § 2201, that Plaintiff IHB did not unlawfully discriminate against Defendant Foy on any other basis;

H.      A declaration from this Court, pursuant to 28 U.S.C. § 2201, that Plaintiff IHB had cause to terminate Defendant Foy based upon her gross misconduct;

I.      An award of interest, costs, and attorneys' fees incurred by Plaintiff in prosecuting this action; and

J.      All other relief to which Plaintiff is entitled.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38, Plaintiff demands a jury trial on all issues so triable.


Dated: May 29, 2024.                    Respectfully submitted,

                                        /s/ Marc J. Randazza
                                        Marc J. Randazza (FL Bar No. 625566)
                                        ecf@randazza.com
                                        RANDAZZA LEGAL GROUP, PLLC
                                        2 S. Biscayne Blvd., Suite 2600
                                        Miami, FL 33131
                                        Tel: (888) 887-1776

                                        Attorneys for Plaintiff,
                                        International Health Brands, LLC