## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

INTERNATIONAL HEALTH BRANDS,
LLC, a Delaware limited liability company,

          Plaintiff,

    vs.

ASHLEE R. FOY, an individual;
MICHAEL L. KAUFMAN, an individual;
and KCM BRANDS, LLC, a Florida
limited liability company,

          Defendants.

Case No. 9:24-cv-80679

## JOINT NOTICE REGARDING DEFENDANT'S MOTION TO COMPEL

Defendants Ashlee R. Foy ("Foy"), Michael L. Kaufman ("Kaufman"), and KCM Brands, LLC ("KCM") (collectively, "Defendants") and Plaintiff International Health Brands, LLC ("IHB" or "Plaintiff") (Defendants and IHB/Plaintiff collectively the "Parties") file this Joint Notice pursuant to this Court's January 23 Order (D.I. 45) regarding Defendants' Motion to Compel Discovery (D.I. 44).

The Parties had met and conferred on December 19, 2024, prior to Defendants' Motion. Counsel for Defendants Messrs. Roshan Shrestha and Thomas Pasternak met with counsel for Plaintiff, Mr. Jay Wolman and his associate, Ms. Kylie Werk met and conferred on January 31, 2025 for nearly 2 hours. While Parties have made certain concessions, they have not been able to reach an agreement on issues discussed below.

I.        **Defendants' Position:**

Plaintiff's case against Ms. Ashlee Foy—a seasoned professional with over 25 years in the health products industry—is nothing more than retaliation for her EEOC discrimination complaint against IHB. The fundamental weakness of Plaintiff's claims is evident: in a trade secret case, Plaintiff has failed to produce even the most basic documents typically expected—most notably, any concrete evidence of the alleged "trade secret" itself.

Plaintiff has produced a mere 242 pages in response to Defendants' Requests in this dispute, of which only about 17 documents totaling 65 pages are non-public IHB materials with any potential relevance. The limited production also suggests that key documents—documents Defendants reasonably expect to exist—have either been withheld or may not have been searched for in the first place. Ms. Foy, based on her firsthand knowledge of IHB's ordinary course of business, recalls specific categories of documents and communications that should exist, yet Plaintiff dismisses these concerns as "imagining things." Instead of conducting a proper search, Plaintiff attempts to shift the burden onto Defendants, demanding that they bear the cost of review and identify specific missing emails—contrary to clear legal precedent that places the cost of discovery compliance squarely on the producing party and contrary to Plaintiff's formal response agreeing to produce all non-privileged documents, including media.  See generally D.I. 44, Ex. A.

Plaintiff's litigation strategy for discovery rests on two untenable positions, both consistently rejected by courts: (1) that anything in Ms. Foy's head constitutes IHB's intellectual property, thereby eliminating the need for documentary evidence, and (2) that due to high turnover at IHB, its lack of institutional knowledge excuses it from conducting a reasonable search. Neither argument holds water, and the Court should not permit Plaintiff to evade its discovery obligations under these baseless pretexts.

## II.      Plaintiff's Position

Defendants do not appear to have any legitimate discovery dispute.  Instead, they speculate as to what they would like to think exists.  IHB owns the fruits of Defendant Foy's labors that it paid for, whether or not they were committed to paper.  She took a supplement formula she developed while paid by IHB to do so, and when IHB chose not to pursue it, she misappropriated it for herself and the other defendants.  Because IHB did not actually bring it to market, the universe of potentially responsive documents is narrower than what Defendants' counsel hypothesizes must exist.  (At no time in this dispute have Defendants themselves offered any evidence that these hypothetical documents exist.)  Further, due to turnover, IHB lacks certain institutional memory and, thus, has resorted to searching for responsive documents rather than necessarily knowing that a particular document exists; Defendants, however, are attempting to use discovery as a "gotcha" game, claiming documents exist without identifying any specific documents or how they might be found.  It must also be noted that IHB believes Defendant Foy may have caused documents to have disappeared; for example, IHB was unable to locate counterparts of certain emails in Ms. Foy's work email account.

## III.     Remaining Dispute

Following the Court's Order, the Parties have attempted to work out an agreement and resolve various issues. Defendants are no longer seeking to compel further responses to Requests 2, 4, 6, 9, 10, 16, 17, 18, 19, 25, 27, 29, 30, 31, 33, 34, 35, 37, 40, 42, 46, 51, 52, 53, 54, 57, 58, 61, 63, 64, 68, 69, 70, 72, 74, 76, 77, 78, 79, 80, 81, 82, 86, 88, 90, and 95 based on Plaintiff's Certificate of Production D.I. 46-2 and the accompanying affidavit of full and complete production. D.I. 46-1 ¶6. Below is the list of Requests and Interrogatories about which Defendants seek Court's intervention.

   1.  **Categories of Requests regarding IHB formulation:**

**Defendants' position:** the document production for each of the following Requests in this category remains incomplete, as evidenced by the following:

- Ex. F shows Mr. REDA. from RED was allegedly involved in the development of IHB Formulation and/or " REDACTED ";
- Plaintiff claims that "IHB chose not to immediately market that particular supplement" and that "IHB team worked together to formulate it and spend time and money on multiple rounds of samples (sic) with the manufacturer" Opp. at 1;
- Ms. Foy asserts that IHB customarily held regular meetings to discuss the products and formulation development;
- Plaintiff agreed to produce documents in response to RFP 73 which includes video files. Counsel now demands Defendants pay for "converting them into a format to determine if there are responsive documents (i.e. transcription)" Ex. E. Email Dated Feb. 3, 2025;
- A complete production of documents supporting these allegations, e.g., emails, memos, calendar invites audio has not been produced.
Manufacturer's agreements and complete set of communications are also missing.

   **a. Defendants maintain production is incomplete with at least the cited portions of each Request and incorporates this position by reference to each of the Requests as if fully set forth therein.**

1. RFP 13 e.g., "all steps and phases involved in the creation and development of the IHB Formulation";

2. RFP 14 e.g., "a list of all personnel involved in its development and documents sufficient to show detailed description of each individual's contributions";

3. RFP 15 e.g. "timeline of the development of IHB Formulation, including key milestones and any specific contributions"

4. RFP 20 e.g., comparisons made between the IHB Formulation and the formulations used in any Renuology products, including but not limited to Immunity Reset Gummies as defined in the Complaint"

5. RFP 21 e.g., "'Immunity Reset Gummies were in fact either an exact copy of the IHB Formulation or substantially identical to the IHB Formulation, and both contained the same ingredients.' Complaint at ¶ 39."

6. RFP 22 e.g., "documents, including lab notebooks, research records, and development logs that reflect the creation and formulation of the IHB Formulation, as well as any subsequent modifications";

7. RFP 23 e.g., "manufacturing process of IHB Formulation including, preparation, purification, testing, analysis, or study of IHB Formulation";

8. RFP 24 e.g., " manufacturers, partners, or nonemployees who had access to IHB Formulation, and all agreements";

9. RFP 26 e.g., "circumstances under which IHB Formulation was disclosed to any nonemployee, including the purpose, date of disclosure, and any conditions or restrictions imposed";

10. RFP 28 e.g., "IHB Formulation made with nonemployee, Global Product Group";

11. RFP 32 e.g., "any plan to use IHB Formulation, its comparison with any existing or similar products in IHB's possession";

12. RFP 36 e.g., "actions taken by IHB or any prior owner to protect the secrecy of the IHB Formulation, including confidentiality agreements, security measures, or legal actions."

**Plaintiff's position:** All identifiable responsive documents have been produced.  Plaintiff cannot produce what does not exist or what it reasonably cannot locate.  While Defendants assert that certain meetings were recorded, absent an exorbitantly expensive transcription process for all recordings while Foy was employed, Plaintiff cannot identify whether there may be responsive recordings.  If Foy can identify particular meetings, they can potentially be produced.  "Under Rule 26(b)(2)(B), parties need not initially provide discovery from sources of ESI that are not reasonably accessible because of undue burden or cost. Rather, the responding party can identify the sources that qualify and state that it is not searching them. Thereafter the responding party need not search these sources unless the court orders so for good cause." S.S. Gensler, 1 Federal Rules of Civil Procedure, Rules and Commentary RULE 26 (Mar. 2014) (footnotes omitted).  If Defendants demand searches of otherwise inaccessible data, cost-shifting is appropriate. *Zubulake v. UBS Warburg LLC,* 216 F.R.D. 280, 284 (S.D.N.Y. 2003)

### 2.  IHB Email List:

**Defendants' position:** the document production for each of the following Requests in this category remains incomplete, as evidenced by the following:

- IHB Email List was only produced on February 6, 2025
- Support for statement "The IHB Email List is a secret and confidential list curated and maintained by IHB." ¶ 36.
- Counsel's representation that there were some unique remail recipients that purportedly support the allegation that Defendants misappropriated the entire email list.  Ex. C Meet and confer summary dated Dec 20, 2024 no emails have been identified;
- Plaintiff produced some communications about the Email List from Mr. REDACTE. However Plaintiff has produced no email communication about audits that led to the determination of the alleged misappropriation.
- Ex. D, IHB_238          REDACTED          RED but Plaintiff has not produced any communications with these entities to demonstrate that confidentiality or security protocols were in place to "guard the secrecy of the information."

   a. **Defendants maintain production is incomplete with at least the cited portions of each Request and incorporates this position by reference to each of the Requests as if fully set forth therein.**

1. RFP 38 e.g., complete IHB Email List that is referenced in the Third and Fourth Claims of the Complaint;

2. RFP 39 e.g., "including internal communications that detail the process, criteria, and sources used to compile the IHB Email List and each individual responsible";

3. RFP 4 e.g., "specific measures IHB took to protect the confidentiality of the IHB Email List, including any policies, agreements, security measures";

4. RFP 43 e.g., "IT forensic reports or audits conducted by experts (internal and external to IHB) to analyze any data breaches or unauthorized access/unusual activities related to the IHB Email List or other Trade Secrets";

5. RFP 44 e.g. "communications between IHB and any nonemployee that reference or discuss the IHB Email List or entries therein… about the exclusivity or confidentiality of the list";

6. RFP 45 e.g. "documents and communications that reference or discuss the IHB Email List or entries therein and its use or integration within any commercial marketing platforms";

7. RFP 47 e.g., "investigation conducted by IHB to determine whether the IHB Email List was misappropriated, including any overlap with other email lists in the industry";

8. RFP 48, e.g., "documents that support Your claim that the IHB Email List is unique and could not have been obtained from sources other than IHB's records."

**Plaintiff's position:** All identifiable responsive documents have been produced.  Plaintiff cannot produce what does not exist or what it reasonably cannot locate.

### 3. Renuology and Spike+Reset Business plans:

**Defendants' position:** the document production for each of the following Requests in this category remains incomplete, as evidenced by the following:

- No IHB Business plans related privilege log entry has been produced.
- No privilege log
- No documents to substantiate your claim in paragraphs 47, 48, 58, 59 of the Complaint- "IHB sales data, market research, customer feedback, and other highly valuable proprietary information" - has been produced.

      **a. Defendants maintain production is incomplete with at least the cited portions of each Request and incorporates this position by reference to each of the Requests as if fully set forth therein.**

1. RFP 49 e.g., "IHB business plans, including drafts, final versions, and any related notes or annotations, that You contend were used or referenced in the creation of the Renuology Business Plan";

2. RFP 50 e.g., "documents that identify the individuals who were involved in the development of IHB Business Plans that You contend were used or referenced in the creation of the Renuology Business Plan"

3. RFP 55 e.g., "communications concerning the Renuology Business Plan, including any notes or comments that discuss the use of IHB Business Plans in developing the Renuology Business";

4. RFP 56 e.g., "documents that identify the individuals who were involved in the development of IHB Business Plans that You contend were used or referenced in the creation of the Spike + Reset Business Plan";

5. RFP 59 e.g., "IHB's awareness of and response to the advertisement from the Spike + Reset brand, including any internal discussions, legal consultations, or actions taken";

6. RFP 60 e.g., Support for "Your allegation that these products 'arose directly from Defendant Foy's exposure to IHB's trade secrets, including IHB sales data, market research, customer feedback, and other highly valuable proprietary information.'" See, e.g., Complaint at ¶¶ 47-50, 58, 59.

**Plaintiff's position:** All identifiable responsive documents have been produced. Plaintiff cannot produce what does not exist or what it reasonably cannot locate.

## 4. Mitigation and enforcement:

Defendants have withdrawn Requests related to this category based on Plaintiff's Certificate of Production D.I. 46-2 and the accompanying affidavit of full and complete production. D.I. 46-1 ¶6.

## 5. Breach of Contract and Tortious Interference:

**Defendants' position:** the document production for each of the following Requests in this category remains incomplete, as evidenced by the following:

- Support for allegation that **"Defendant Foy admits that although she was . . . later Chief Operating Officer, and although her job duties included developing new products and brands for IHB, particularly brands which might be positioned as a 'crucial component [that is] missing' from the supplements market in which IHB operates."** E.g. Complaint at ¶ 61 has not been produced.

   a. **Defendants maintain production is incomplete with at least the cited portions of each Request and incorporates this position by reference to each of the Requests as if fully set forth therein.**

1. RFP 65 e.g., "documents and communications that detail when and how You first met or communicated with Defendant Foy, including dates and participants"

2. RFP 71 e.g., "all duties, responsibilities, and functions of Defendant Foy in her role as Chief Operating Officer ("COO")"

**Plaintiff's position:** All identifiable responsive documents have been produced. Plaintiff cannot produce what does not exist or what it reasonably cannot locate.

**6. General Requests Applicable to all Trade Secrets:**

**Defendants' position:** the document production for each of the following Requests in this category remains incomplete, as evidenced by the following:

- All communications between Foster Coulson, Brandon Kuemper, Lauren Bradford, or Defendant Foy related to Trade Secrets have been produced.
- Ex. D, IHB_238     REDACTED      RED but Plaintiff has not produced any communications with these entities to demonstrate that confidentiality or security protocols were in place to "guard the secrecy of the information."
- Plaintiff has accused that Ms. Foy deleted certain emails. D.I. 46-2 but have not produced any document retention policies or email deletion policies.

    **a. Defendants maintain production is incomplete with at least the cited portions of each Request and incorporates this position by reference to each of the Requests as if fully set forth therein.**

1. RFP 1 e.g. "non-privileged communications to and from Foster Coulson, Brandon Kuemper, Lauren Bradford, or Defendant Foy regarding each Trade Secret";

2. RFP 7 e.g. "documents related to the disclosure of the alleged Trade Secret to nonemployees, including: (a) Records listing each nonemployee who has been given access to the Trade Secret; (b) Documents detailing the manner in which the Trade Secret was conveyed to each nonemployee including download logs, file access histories and document versions; (c) Copies of any confidentiality agreements, non-disclosure agreements, or other measures implemented to maintain the confidentiality of the Trade Secret; (d) Records of instructions provided to nonemployees regarding the handling and protection of the Trade Secret; (e) Documents related to any audits or reviews conducted to ensure compliance with confidentiality measures";

3. RFP 8 e.g., "communications between IHB and any nonemployees that reference or discuss any of the alleged Trade Secret";

4. RFP 94, e.g., Plaintiff's practice, policy, or procedure for the retention of documents and/or classes or categories of documents, including but not limited to, e-mail communications";

5. RFP 96 e.g., "communications between Plaintiff and any person identified in Plaintiff's initial disclosures . . . relating to this Action.;

6. RFP 97 e.g., "documents and things identified in Plaintiff's initial disclosures".

**Plaintiff's position:** All identifiable responsive documents have been produced.  Plaintiff cannot produce what does not exist or what it reasonably cannot locate.

**7. Operations and P&L:**

**Defendants' position:** the document production for each of the following Requests in this category remains incomplete, as evidenced by the following: Counsel advised that "subpoena was a proper avenue to request RED documents" suggesting RED is not related to IHB (Ex. C email dated

Dec. 20).  However,  Ex. F shows Mr.  RE  R from RED was allegedly involved in the development of IHB formulation and/or "Kid's Spike Support Gummies"

   **a. Defendants maintain production is incomplete with at least the cited portion of the Request.**

   1. RFP 87 e.g., "documents and communications related to the relationship between IHB and RED including any agreements, policies, or protocols governing how trade secrets."

**Plaintiff's position:** All identifiable responsive documents have been produced.  Plaintiff cannot produce what does not exist or what it reasonably cannot locate.

### 8. Interrogatories

Defendants have proposed a compromise, limiting their request to four narrowly tailored interrogatories and explaining that Plaintiff's numerosity objection fails under the related question test in *Powell v. Home Depot*, 2008 WL 2473748, at *2 (S.D. Fla. June 16, 2008). Courts routinely reject such objections and have discretion to allow additional interrogatories where warranted. *Automated Transaction Corp.*, 2010 WL 11505278, at *1 (S.D. Fla. Aug. 3, 2010); *Perez v. Aircom Mgmt. Corp.*, 2012 WL 6811079, at *2 (S.D. Fla. Sept. 24, 2012). Plaintiff has not responded to this compromise at the time Defendants' Reply.

- 10. Identify the IHB Email List referenced in the Third and Fourth Claims of Your Complaint, including all individuals/entities on it and those responsible for its creation and/or maintenance.

- 11. Identify the IHB Business Plans you allege were misappropriated in creation of the Renuology and Spike + Reset Business Plans, including all sources, IHB products, prior plans, materials, and documents used, and personnel involved in preparing each IHB Business Plan.

- 13/15/16. Set forth in detail how you would compute each category of Plaintiff's claim of alleged damages.

- 21. Identify each individual responding to, or assisting in, the response to these Interrogatories and Defendants' Requests for Production.

**Plaintiff's position:** Plaintiff believes its numerosity objection was well-founded.  Nevertheless, Plaintiff is pleased to see that Defendants have presented a reasonable compromise, and it is willing to provide responses to the foregoing four interrogatories.

### 9. Privilege Log

**Defendant's Position:** No privilege log has been produced in this case.


**Plaintiff's position:** No identifiable responsive documents have been withheld on the basis of privilege.

Respectfully submitted,

| Dated: February 7, 2025 | |
|---|---|
| */s/ Marc J. Randazza*<br>Marc J. Randazza (FL Bar No. 625566)<br>Kylie R. Werk (FL Bar No. 1031756)<br>ecf@randazza.com<br>RANDAZZA LEGAL GROUP, PLLC<br>2 S. Biscayne Blvd., Suite 2600<br>Miami, FL 33131<br>Tel: (888) 887-1776<br><br>Jay M. Wolman (Pro Hac Vice)<br>jmw@randazza.com<br>RANDAZZA LEGAL GROUP, PLLC<br>100 Pearl Street, 14th Floor<br>Hartford, CT 06103<br>Tel: (888) 887-1776<br><br>*Attorneys for Plaintiff,*<br>*International Health Brands, LLC* | */s/ Elizabeth Jimenez*<br>Alan L. Raines  (Florida Bar No. 520111)<br>alan@raineslegal.com<br>Elizabeth Jimenez (Florida Bar No. 1008516)<br>ejimenez@raineslegal.com<br>RAINES LEGAL<br>2500 N. Military Trail, Suite 303<br>Boca Raton, FL  33431<br>Telephone:     (561) 693-3221<br>Facsimile:      (561) 404-1104<br><br>Thomas G. Pasternak (*Pro Hac Vice*)<br>tpasternak@taftlaw.com<br>Roshan P. Shrestha (*Pro Hac Vice*)<br>TAFT STETTINIUS & HOLLISTER LLP<br>111 E. Wacker Drive, Suite 2600<br>Chicago, IL  60601<br>Telephone:     (312) 527-4000<br>Facsimile:      (312) 527-4011<br><br>*Counsel for Defendants* |